[No. 5159.    Decided October 14, 1904.]

### JOHN THAYER et al., Appellants, v. SPOKANE COUNTY, Respondent.[1]

BOUNDARIES—GOVERNMENT SURVEYS—MONUMENTS—FIELD NOTES —LOCATION OF CORNER. Upon a dispute as to the true location of a section corner the actual location of the government monument controls the field notes, in case of discrepancy, if shown by clear and convincing proof.

SAME — EVIDENCE OF LOCATION—SUFFICIENCY. Where three surveyors locate one of the witness trees and identify the location of a section corner, one of them finding the stake set in 1883, the evidence is sufficiently clear and convincing to sustain the finding of the trial court, who heard and saw all the witnesses, that such was the true location, although there was testimony of the adverse party and others not surveyors to the effect that such location did not coincide with the field notes, and that they found the true stake at the proper location, especially in view of acquiescence in the location found, mutilation of the witness tree, admissions, and other corroborating circumstances.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DILIGENCE. A new trial on the ground of newly discovered evidence is properly denied where the affidavits fail to show diligence to obtain the suggested evidence, and which is cumulative or of a disputed character.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered June 27, 1903, upon the

[1]Reported in 78 Pac. 200.

findings and decisions of the court, after a trial on the merits, a jury being waived, in an action of ejectment. Affirmed.

*W. J. Thayer,* for appellants.

*Horace Kimball* and *Miles Poindexter,* for respondent.

HADLEY, J.—Appellants brought this action against Spokane county, and alleged that on the 1st day of March, 1896, they were seized and possessed of a certain described eighty-acre tract of land, in said county; that about said date the county, without their consent, forcibly entered upon, and took possession of, a strip of land forty feet in width, extending across the aforesaid tract, which strip is now known as the "extension of the Rutherford road;" that said county has ever since had said strip without consent of appellants. Damage to the land in the sum of $120 is alleged, and judgment is prayed for said sum, together with judgment awarding the possession of said strip to appellants. An injunction against the county is also sought to prevent the continuance of the acts charged.

The county answered, denying the material allegations of the complaint, and alleged, affirmatively, the due establishment of a highway upon said strip of land, on the 6th day of September, 1895; that the then owner of the land consented to the establishment of the road, and waived all claims for damages. It appears that the legal title to the land was then in the Northern Pacific Railroad Company, but appellants claimed some interest therein. It is further averred that, immediately after the establishment of the road, it was opened for travel, and has ever since been traveled by the public, and kept open at public expense. The cause was tried before the court, without a jury, the jury being waived, and judgment was

entered dismissing the action, and awarding costs to the
county.   The plaintiffs have appealed.

The principal errors assigned are based upon the court's
findings.   It is claimed that the court erred in finding
that the true northeast corner of the northwest quarter of
the section is at the point where respondent's witnesses
claimed it to be, and not at a point eighty feet west thereof,
as claimed by appellants.   If the corner was located by
the government surveyors where the county contends they
located it, then under no view of the case is the road upon
appellants' land.   The actual point of establishment must
govern, without regard to what the field notes may say, if
its location is shown by clear and convincing proof.   *Ca-
deau v. Elliott,* 7 Wash. 205, 34 Pac. 916.

The testimony in behalf of appellants consists of their
own, and that of some others, who say they have seen
a stake at the point for which they contend.   Appellants
also claim to have measured the distance from the north-
east corner of the section to a point on the north section
line, about forty chains west from the northeast corner,
near which point they say they found a stake having the
appearance and marks of a government stake.   Neither
the appellant, who made the measurement, nor his assist-
ant, was a surveyor, and they used an ordinary chain,
measuring along a fence, which they assumed to be upon
and following the section line.   Appellants, therefore,
contend that they, and their witnesses, have actually seen
the stake at its original location, and that they are also
sustained by the government field notes, which indicate the
location of the post as being 39.84 chains west of the
aforesaid northeast corner.   Appellants also testified that
trees, substantially corresponding with monuments de-
scribed in the field notes, were there when they first saw
the stake at this location, but that they are not there now.

Surveyors testified, in behalf of respondent, that they have seen the stake and located the corner at the point where the county contends it was originally placed. The surveyor who laid out the county road found the stake there, and also found one of the witness trees, the marks having been made by a surveyor's scroll. The other witness tree was gone. He testified that the marks upon the stake and tree were very old, and that there was much undergrowth surrounding the stake, indicating that it had not been disturbed for a good many years. Another surveyor, at another time, searched for the corner, and, while he did not find the stake discovered by the other witnesses, he did find the witness tree, and located the corner within a few feet of the stake found by the other witness. He also discovered that some of the marks on the tree had been cut off, but the mark of the scroll was still to be seen. Still another surveyor made an independent examination for the corner, and discovered the same witness tree found by the other two; also, the remains of old trees lying on the ground, in the direction of the other bearing tree, as the direction is indicated by the field notes.

The original survey was made in 1883. Appellants admit that what looked like a government stake stood from 1890 until 1895 at the point which all the surveyors substantially agree is the true corner, but they contend that it was a spurious stake. We think the evidence fails to show that the stake was not there prior to 1890. It is true, the fact as to the true original location is to be determined from any satisfactory and convincing evidence. The testimony of others may be as convincing as that of surveyors, and it is not a matter to be proven merely by the testimony of experts. The weight of each witness' testimony must depend upon his opportunity for knowl-

edge about the subject, controlled to some extent by his appearance as to candor and truthfulness, and also by his interest in the subject matter. However, from the well known experience of surveyors in such matters, it is not unreasonable that the trial court may have attached much weight to their testimony in this case.

Appellants contend that the field notes' measurement from the northeast corner supports their claim, and should be taken as conclusive, but it is a well established principle, and we have already observed, that the actual location controls, independent of the field notes, if that location is determined by other convincing testimony to differ from the one indicated in the field notes. This rule is admitted by appellants, but they contend that the proofs, submitted by respondent in this case, are not clear and convincing, and that the circumstance that the distance mentioned in the field notes comes substantially to the location of the stake found by them should be held to so reinforce their testimony as to make it conclusive. It will be remembered, however, that no witness trees now exist at appellants' asserted location, while there is one which speaks for the other location. An existing monument must be taken as a strong factor in determining a dispute of this kind. Moreover, the evidence is not conclusive that the measurement was correctly made by appellants. It does not appear that the appellant and his assistant, who made the measurement, were surveyors, and it may be assumed that they were not accustomed to handling the chain. It also appears that they followed a fence, assuming it to be upon a direct line, but the proofs do not show that it was so located, or that it followed the section line.

Further circumstances are also prominent in the case. One of the appellants says that, in 1888, he first saw the

stake and monuments where he claims the true corner to be, and that in 1890 he first saw the stake and witness tree at the point where the county claims the corner to be. He resided upon the land from 1891, knew of the location of the road in 1895, built his fence on the line of the road in 1896 in pursuance of direction by the road supervisor, and yet, until 1902, he took no steps to assert his claim that the stake he says he discovered in 1888 represented the true corner. These circumstances the trial court doubtless weighed as against the good faith of his present contention. There was evidence as to the mutilation of the bearing tree at the location claimed by the county. By whom, or in pursuance of what motive, this was done does not appear. This is a mere question of evidence, and we are unwilling to say that the trial court, who heard and saw all these witnesses testify, observing their demeanor, apparent candor, or lack of candor, as well as their apparent knowledge upon the subject, was not justified in finding, as he did, that the weight of the testimony showed the corner as claimed by the county to be the true original location.

It is also assigned that the court erred in denying the motion for a new trial. The motion is based chiefly upon a claim of newly discovered evidence. We have read the affidavits in support thereof, and also a counter affidavit, all of which are included in the statement of facts. Aside from any question of diligence to obtain the suggested evidence for the former trial, the affidavits in the record show that what is not merely cumulative is of a disputed character, and we think it was not error to deny the new trial.

The judgment is affirmed.

FULLERTON, C. J., and DUNBAR, ANDERS, and MOUNT, JJ., concur.