[No. 10965.   Department One.   April 8, 1914.]

YARROW LAND COMPANY, *Appellant*, v. HARRIETTE A. ROSS
*et al.*, *Respondents.*[1]

BOUNDARIES—COURSES AND DISTANCES—MONUMENTS.  In the event of a conflict, courses and distances must yield to original stakes and monuments located on the ground.

VENDOR AND PURCHASER—BONA FIDE PURCHASER — RECORD — CONSTRUCTIVE NOTICE.  A recorded deed is constructive notice to subsequent purchasers only of the land described, and where there was a mistake in the calls and distances of the description, and also in the township, it is not notice to subsequent purchasers.

SAME—BONA FIDE PURCHASER—NOTICE—EVIDENCE.  Where plaintiffs had purchased tracts of land by an erroneous description, marking the initial point by a gas pipe, and used the tracts to convey water from springs for a water system, defendants, subsequently purchasing a conflicting tract, are *bona fide* purchasers for value, where, by reason of the error in the description of the plaintiff's deed, defendants had no constructive notice of a conflict, the gas pipe had disappeared at the time of their purchase, the water pipes were buried and not visible, no part of the stream or springs were upon their land, and they had no notice of plaintiff's water system, and nothing of a physical character existed on defendants' land sufficient to give them notice of plaintiff's claim of title.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered October 5, 1912, upon findings in favor of the defendants, in an action to quiet title.  Affirmed.

*Shank & Smith*, for appellant.

*Carkeek, McDonald & Kapp* and *Robert F. Booth*, for respondents.

CROW, C. J.—Plaintiff alleges that, at all times since July 13, 1899, it and its grantors have been the owners of, and in the possession of, certain land lying east of Lake Washington, in King county.  The land is irregular in shape, and is subdivided into three tracts, designated as A, B, and C.

[1]Reported in 139 Pac. 876.

Tract A, the westerly end of which is on the shore of Lake Washington, and tract B, east of A, are long and narrow, extending in a direction somewhat north of east to tract C. On tract C are certain springs from which a small stream flows over all three tracts to the lake. In certain headworks, or a small reservoir, constructed on tract C, water is collected from the springs, conducted by gravity through an iron pipe laid along and under the three tracts to the lake, thence under and across a shallow arm of the lake to a point known as Yarrow, and vicinity, where it supplies a number of homes with water for domestic and other purposes. Prior to July 13, 1899, these three tracts, together with a larger body of land of which they formed a part, belonged to the Kirkland Land and Improvement Company, a corporation. Shortly prior to that date, tracts A, B, and C were surveyed for the purpose of obtaining their description by metes and bounds, so as to convey them to one H. A. Noble. A deed for the three tracts was executed and delivered to him by the Kirkland Land and Improvement Company on July 13, 1899. Attached to the deed was a plat or tracing of tracts A, B, and C. The description in the deed (hereinafter mentioned as the "deed description") fixed the initial point of tract A in the following language:

"The parcel of land consisting of three tracts: A, B, and C, as set forth upon the annexed plat, which is hereby referred to and made a part hereof; said tracts being in the north half of lot two (2), and the north half of the southeast quarter of the northwest quarter (N$\frac{1}{2}$ of S. E.$\frac{1}{4}$ of N. W.$\frac{1}{4}$) of section 17, in township 26, north of range 5, east of the Williamette Meridian.

"To locate the initial point of the property herein described, begin at the quarter corner of sections 8 and 17, go thence along the section line between section 8 and 17 south 89° 46′ 29″ west 2500 feet to the meander corner to sections 8 and 17, which is marked on the ground by an iron gas pipe about 1$\frac{1}{4}$ inches in diameter, and is situated near high water mark on Lake Washington in the center of the county road at Houghton; go thence south 7° 7′ 15″ west 1859.39 feet

to the initial point of the tract of land hereinafter described which is marked by an iron gas pipe 1½ inches in diameter driven in the ground and located near the high water mark on Lake Washington, which is the initial point of the property herein more particularly described as tract A, towit:"

The deed and plat show that, from this initial point, tract A extends in a northeasterly direction to tract B; that in the easterly boundary line of tract A, the initial point of tract B is located; that tract B extends thence easterly to tract C; and that tract C lies immediately east of tract B. The plat attached to the deed shows the springs and headworks on tract C, and an irregular line running therefrom along all three tracts to the lake, which plaintiff claims is the stream. The iron pipe through which water is carried towards and across the arm of the lake is buried beneath the soil, is not visible, and cannot be seen at any point, except that plaintiff claims it may be seen under the water of the lake near the shore of tract A. Plaintiff deraigns its alleged title under the deed above mentioned, and through subsequent deeds which contain the identical description therein contained, but have no plat attached.

The defendants own, and are in the possession of, three contiguous strips of land running easterly from the shore of Lake Washington, holding title under the Kirkland Land and Improvement Company. A portion of these strips is also a portion of tract A claimed by plaintiff, the part in conflict being neither all of tract A nor all of the defendant's land. It will thus be seen that plaintiff and defendants each claim title under the Kirkland Land and Improvement Company. Defendants fenced and cultivated their land. For some time after they had purchased, none of the parties to this action seemed to be aware of any conflict. Defendants claim that, during the year 1904, the Kirkland Land and Improvement Company, common grantor of the parties, believing the tract claimed by appellant was further north, had the southerly

portion of its property surveyed and platted into small tracts; that it placed this platted property upon the market, one R. H. Collins acting as its selling agent; that Mrs. Reitze and Mrs. Ross, two of the defendants, were then living in the city of Chicago; that, learning the land was for sale, they came to Seattle in February, 1905, and were taken upon the ground by Mr. Collins, who exhibited stakes marking the platted tracts; that they each purchased the respective tracts which they now claim to own; that later Mrs. Curtis, the remaining defendant, also bought a tract adjoining and south of that purchased by Mrs. Ross; that sometime later plaintiff, desiring to fence its property or make other improvements, caused it to be again surveyed; and that this act challenged defendants' attention and precipitated the present dispute. It is conceded that defendants' land lies in section 17, township 25, north of range 5, east of the Williamette Meridian; that the land which plaintiff thought it was purchasing lies in the same section, township, and range; and that the description in the deed from plaintiff's grantor located its land in township 26 instead of 25. Ignoring the error in the description of the township, the conflict between the parties occurs in this manner: By following the calls and distances in plaintiff's deed as above quoted, the initial point of tract A would be located a considerable distance north of, and about one hundred feet west of the point where plaintiff claims the gas pipe was placed as a monument at the true initial point. To locate the initial point as now claimed, plaintiff in its complaint alleged the following description:

"Three certain pieces or parcels of land in King county, Washington, designated as tracts A, B, and C, and being in the north half of lot 2 and the east half of the northwest quarter of section 17, in township 25, north of range 5, east of Williamette Meridian.

"To locate the initial point of said property begin at the quarter corner to sections 8 and 17, go thence along the

section line between sections 8 and 17, south 89° 46′ 29″ west 2500 feet to the meander corner to said sections, which is marked on the ground by an iron gas pipe about 1¼ inches in diameter, and is situated near high water mark on Lake Washington in the center of the county road at Houghton; go thence south 0° 27′ 16″ East 1966.76 feet to the initial point of the tract of land hereinafter described, which is marked by an iron gas pipe 1½ inches in diameter driven in the ground and located near the high water mark on Lake Washington, which is the initial point of the property herein more particularly described as tract A, to wit:"

This will be referred to hereafter as the "complaint description." It is conceded that the calls and distances of the "deed description" will not locate the initial point of tract A at the point now claimed by appellant, while the calls and distances of the "complaint description" will so locate it. If, starting at the original point of tract A fixed by the "deed description," a plat of tracts A, B, and C should be made, such plat would include land towards the north owned by the Kirkland Land and Improvement Company which does not interfere with defendants' land. If on the other hand, a plat of tracts A, B and C were to be made from the initial point as fixed by the "complaint description" where plaintiff claims the gas pipe was driven for a monument, such plat would include the springs, the stream, a portion of the water pipe, and a part of defendants' land. The buried pipe line does in fact intersect a portion of defendants' land. Plaintiff claims the legal title to the land in dispute, while defendants insist that they hold title; that they are in possession; and that they were purchasers for value in good faith without notice of any claim of the plaintiff. Plaintiff, by subsequent conveyances, has obtained record title to a strip of land along which it can run its pipe line to the lake. A portion of its buried pipe line crosses the land claimed by defendants, and plaintiff commenced this action to quiet its title to the land in dispute, and to enjoin defendants from

trespassing thereon or making any improvements thereon. After hearing the evidence, the trial judge held with defendants, quieted their title, and refused any equitable relief to plaintiff. From this decree, the plaintiff has appealed.

Appellant first insists that the deed under which it claims title was a good and sufficient deed to convey title to the tract in question. In support of this contention, it calls attention to the fact that the deed located the initial point of tract A as a point marked by an iron gas pipe, one and one-half inches in diameter, driven in the ground near the high water mark of Lake Washington; that, commencing at this point, the deed describes various courses and distances which lead to the initial point of tract B, also marked by a one and one-half inch gas pipe driven in the ground; and that, in the same manner, the initial point of tract C, marked by a gas pipe driven in the ground, may be located. Appellant then argues that, if we disregard the incorrect township number, and the incorrect courses and distances of the calls of the deed intended to lead from the quarter corner of sections 8 and 17 to the gas pipe driven in the ground near the high water mark of Lake Washington, and if we accept such gas pipe as the initial point of tract A, we will, by following the deed description, from such initial point, have a correct description of the tract which appellant claims to own. Appellant further argues that all natural monuments, such as the springs, the stream, the shore of Lake Washington, and all artificial monuments, such as gas pipes driven in the ground, conclusively locate the three tracts in accordance with its contention. It invokes the rule that, in the event of a conflict, courses and distances must yield to natural and ascertained objects; that original monuments, when ascertained, are satisfactory and conclusive evidence of the lines originally run which mark the true boundaries of the tract surveyed, although they may not correspond with the plat or the field notes of the surveyor, and that monuments

are facts, while field notes and plats giving courses and distances, are but descriptions to be utilized as aids in ascertaining such facts. In brief, the substance of appellant's contention is that, as a monument, fixed and certain, was placed at the initial point of tract A, courses and distances must yield thereto, and that a survey from such ascertained monument will include the land which it now claims. In support of these contentions appellant cites *Greer v. Squire*, 9 Wash. 359, 37 Pac. 545; *Davies v. Wickstrom*, 56 Wash. 154, 105 Pac. 454, 134 Am. St. 1100; *Campbell v. Seattle*, 59 Wash. 612, 110 Pac. 546; *Thayer v. Spokane County*, 36 Wash. 63, 78 Pac. 200; *Olson v. Seattle*, 30 Wash. 687, 71 Pac. 201; *Inmon v. Pearson*, 47 Wash. 402, 92 Pac. 279.

These and other cases cited by appellant sustain the general rule for which it contends, to the effect that, in the event of a conflict, courses and distances must yield, and be subordinated to original stakes and monuments. We are of the opinion, however, that the principle invoked cannot be applied to the facts of this case as disclosed by the record. There was evidence that, in the year 1899, a gas pipe one and one-quarter inches in diameter was driven in the ground at the initial point of plat A by the surveyor who made the plat attached to the deed, but the weight of the evidence further shows that no such monument existed at the point mentioned when respondents, in 1905, purchased the lands they now claim. They had no notice of any such monument, nor did any fact or circumstance come to their knowledge requiring them to take notice thereof. The recorded deed from the Kirkland Land and Improvement Company to Noble was constructive notice to the respondents only of a conveyance of the land therein described. Bearing in mind · the fact that a mistake in the description of the township, and a mistake in the calls and distances by which the initial point was to be located, existed in the deed, it is apparent that the recorded deed was not constructive notice to respondents that appellant was claiming any portion of the

land which they were about to purchase. The evidence shows that the county assessor, in making a plat of subdivisions of the northwest quarter of section 17, township 25, north range 5, located tracts A, B and C a considerable distance north of the lands now claimed by respondents; that, upon the assessor's plat, the tracts A, B, and C in no manner conflict with respondents' lands, which are also shown on the plat; and that taxes were severally paid by appellant and respondents in accordance with this plat. It is apparent that the only notice to respondents upon which appellant can possibly rely must be actual notice of the existence of the alleged monuments. It is contended that the respondents had notice of the existence of the springs, the headworks on tract C, the stream running from the springs to the lake, the buried pipe, and the submerged pipe at the point it could be seen under the waters of Lake Washington. The preponderance of the evidence however, shows that none of these physical conditions appeared upon any portion of the tracts purchased by respondents; that the stream at no point touched their land; that it passed entirely to the north thereof; that no gas pipe, water pipe, or monument could be seen upon their land; that they had neither knowledge nor notice of the fact that any portion of the water pipe was visible under the waters of Lake Washington; that while rumors of the existence of appellant's water system existed in the neighborhood, the common report was that appellant's water pipe followed, and was under, the bed of the stream; and that respondents never knew the water pipe was buried on any portion of their lands until long after they had purchased, had paid value, and had taken possession. We conclude, from all the evidence, that nothing of a physical character existed upon respondents' land sufficient to give them notice of appellant's alleged claim or title; that respondents purchased in good faith, and for a valuable consideration without actual or constructive notice, and that they were not aware of any conflict in title until appellant commenced its subsequent

survey for the purpose of fencing or making other improvements.    Manifestly the equities of this case are with respondents.

The judgment is affirmed.

PARKER, GOSE, and MOUNT, JJ., concur.