[No. 8808.   Department One.   May 21, 1910.]

R. C. TURNER *et al.*, *Respondents*, v. JOHN S. CREECH *et al.*, *Appellants*.[1]

APPEAL—REVIEW—TRIAL—FINDINGS.   Upon appeal the supreme court will not recast conflicting and confusing findings of the trial court, in order to harmonize them.

BOUNDARIES— CONFLICTING   CALLS — SHORTAGE—QUANTITY—LOCATION.   Where the owner of the northern portion of lots supposed to be 130 feet long, but the north line of which projected into the street, conveyed a strip 6 2-3 feet wide to the owner of the south 43 1-3 feet of the lots, the description starting from a point 80 feet south of the northwest corner, and the strip was surveyed and marked upon the ground and the vendee took possession and made improvements, ejectment cannot be maintained by the grantor or his subsequent grantee to recover part of the strip conveyed upon ascertaining that the lots were only 128.2 feet long, although it was the intention by the conveyance to reserve 80 feet in the northern tract.

SAME—ACTS OF COMMON GRANTOR.   The location of a boundary line by a common grantor is binding upon the grantees.

SAME—QUANTITY—BEGINNING POINT.   Where a quantity is of the essence of the contract, it controls courses in the description, the beginning point of which is of no higher dignity than other calls.

SAME — LOCATION — POSSESSION — ACQUIESCENCE.   Practical or agreed location of boundaries, acquiesced in or acted upon by the placing of improvements, controls the calls of a deed.

[1]Reported in 108 Pac. 1084.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered September 25, 1909, upon findings in favor of the plaintiffs, in an action of ejectment, after a trial on the merits before the court without a jury. Reversed.

*John C. Hogan,* for appellants.
*Boner & Boner,* for respondents.

CHADWICK, J.—In June, 1901, appellants Creech and wife were the owners of the south forty-three and one-half feet of lots 1 and 2, block 6, Weatherwax & Benn's Addition to Aberdeen. This tract was occupied as a dwelling place, and was inclosed with a fence. The lots were platted, each fifty by one hundred and thirty feet. The remainder of the lots was owned by one Harriet Dutcher. Appellants in that year purchased from Mrs. Dutcher six and two-thirds feet, lying along their north line. The tract was surveyed and staked, and appellants' fence was put upon the line as marked by the surveyor and agreed upon by the parties. The description in the deed is as follows:

"Commencing at the northeast corner of lot one (1) in block six (6) in Weatherwax and Benn's Addition to the Town now City of Aberdeen, thence southerly along the easterly line of said lot one (1) eighty (80) feet to point of beginning; thence westerly parallel with Fifth street, one hundred (100) feet to the westerly line of lot two (2) in said block six (6); thence southerly along the westerly line of said lot two (2) six and two-thirds (6 2-3) feet; thence easterly parallel with said Fifth street one hundred (100) feet to the easterly line of said lot one (1); thence northerly, along the easterly line of said lot one (1) six and two-thirds (6 2-3) feet to point of beginning."

Thereafter appellants extended their dwelling house so as to cover a part of the six and two-thirds foot strip. On May 4, 1905, Mrs. Dutcher sold and conveyed to respondents the portion of the lots 1 and 2 then owned by her, describing it as the northerly eighty feet of lots 1 and 2. Respondents entered into possession of the land and have ever since, and

are now, occupying it as a home.   At the time respondents moved onto the land, it was inclosed by a fence, the two lots making two tracts, one fifty by one hundred, and the other eighty by one hundred.   In June, 1908, the city of Aberdeen undertook the permanent improvement of Fifth street which abutted on the north of the Turner property, and at that time the city surveyor determined that the Turner property encroached one and one-tenths feet upon Fifth street.   These figures were accepted by the respondents, and they shortly thereafter began this action to eject appellants from the north one and eight-tenths feet of their tract, upon the theory that, inasmuch as Mrs. Dutcher had intended to reserve eighty feet to herself at the time she made the deed to the six and two-thirds feet, the shortage in the lots should fall upon these appellants.

Appellants, answering, denied the ownership of respondents, and set up title in themselves.   They also pleaded a mutual mistake, in that Mrs. Dutcher and these appellants believed, at the time their deed was executed, that the lots were one hundred and thirty feet long, and not one hundred and twenty-eight and two-tenths, as would result if the figures of the city engineer are accepted.   The court found that, although the official plat shows the lots to be one hundred and thirty feet long, they are in fact one hundred and twenty-eight and two-tenths feet; and that Mrs. Dutcher intended to, and did, retain the northerly eighty feet for herself, and intended to convey to appellants only the land lying between her eighty feet and the property then owned by them; that both supposed this strip to be six and two-thirds feet, but that in fact it was one and two-tenths feet less than the estimated width.   At the request of appellants, the court also found that, according to the official plat as recorded in the office of the auditor of Chehalis county, the lots were one hundred and thirty feet in length; that, after platting the land, Samuel Benn and wife, who were then the owners, conveyed the whole of said lot in three distinct parcels, each

forty-three and one-third feet wide, the grantor of these ap-
pellants acquiring the southerly forty-three and one-third
feet; that Mrs. Dutcher thereafter acquired the northerly
eighty-six and two-thirds feet.

The findings of the trial court are confusing, if not actual-
ly contradictory of the facts upon which the decree must rest
if sustained. This consequence is not unusual where each
party submits findings, and the paragraphs are severally
marked "found" or "refused," by the court. Dual findings
upon the same subject are bound to follow, and they but lead
to confusion, and contradictions are almost sure to creep in.
Proper practice demands that findings of fact and conclusions
of law come to us in some concrete form. This court cannot,
and it should not, be put to the burden of winnowing out, re-
casting, or rewriting the findings of trial courts in order
to harmonize them so that we may follow the theory of the
trial judge. A complete and perfected set of findings should
be prepared after they have been settled by the court.

Error is assigned in that the court refused to permit one
E. N. Simms, a son of Mrs. Dutcher, now deceased, to tes-
tify as to the intent of his mother at the time she executed
her deed to appellants; that erroneous conclusions of law were
drawn from the facts found; and that the court erred in mak-
ing certain findings proposed by respondents and rejecting
other findings proposed by appellants. As we view the case,
it is unnecessary to discuss any other than the second assign-
ment of error. Mrs. Dutcher was the common grantor of
these parties, and it will not be denied that they are bound by
her conduct. At the time the deed to the six and two-thirds
feet was executed, the parties were acting in the utmost good
faith, neither one doubting the exact location of their lines.
It was the intent of the one to take fifty feet and the other
to retain eighty feet. The equities up to this point were
equal. But the parties went further and employed a surveyor
who marked the boundaries of the land, and, indeed, at that
time the original corner stakes were at the northeast corner

of lot 1 and also at the southeast corner. The surveyor ran his lines from these points and marked off fifty feet from the southeast corner and eighty feet from the northwest corner. In describing it, for convenience he fixed the northeast corner as the place of beginning, but the fact remains that a certain tract of land was laid out and agreed upon. Mrs. Dutcher put her grantees in possession. She permitted them to build a fence on the line agreed upon, and the house to be extended over the strip conveyed; so that, if it now diminished in quantity, not only the fence, but the wall and eaves of the house would have to give way to the new line. Clearly, Mrs. Dutcher could not recover in ejectment; and, if she cannot, the respondents, having notice of the claims of appellants, cannot recover. The location of a line by a common grantor is binding upon the grantees. *McGee v. Stone*, 9 Cal. 600; *Ross v. Turner's Lessee*, 5 Yerg. (Tenn.) 338; 5 Cyc. 940. Possession is notice. *Dennis v. Northern Pac. R. Co.*, 20 Wash. 320, 55 Pac. 210; *Kuhl v. Lightle*, 29 Wash. 137, 69 Pac. 630; *Peterson v. Philadelphia Mtg. & Trust Co.*, 33 Wash. 464, 74 Pac. 585.

Some point is made over the description in that it commences at the northeast corner of lot 1 and runs thence southerly eighty feet to the point of beginning. We have already said enough to show that, in our judgment, this can make no difference. The beginning point of a survey is of no higher dignity or importance than any other. *Davis v. Smith*, 61 Tex. 18. The case falls within the rule of practical location or agreed boundaries. To discover the true intent of a deed we must look to the whole of it, as well as the acts of the parties. Reference to the whole description will show that the primary intent of the grantee was to buy, and of the grantor to sell, six and two-thirds feet, and the fact that the true northeast corner of lot 1 was one and eight-tenths feet south of the point fixed by the surveyor will not be allowed to overcome the acts of the parties.

"A surveyor cannot be allowed, under any circumstances, to fix private rights or lines by any theory of his own. . . . It is not his business to decide questions of law, or to pass upon facts that belong to the tribunal dealing with the decision of facts." *Jones v. Lee*, 77 Mich. 35, 43 N. W. 855.

See, also, *Miller v. Mills County*, 111 Iowa 654, 82 N. W. 1038. The conveyance of the strip six and two-thirds feet by fifty was the essence of the contract, and the quantity of the land to be conveyed will control in such cases, although the call of the deed might not include the whole tract. 3 Am. & Eng. Ency. Law (2d ed.), 790, 791. Practical or agreed location of a boundary line may result from long acquiescence in its location, or when drawn and acted upon by the parties, as where valuable improvements are placed with reference to it and before it is denied by either party. 5 Cyc. 930 *et seq*.

In *Flynn v. Glenny*, 51 Mich. 580, 17 N. W. 65, it was held that purchasers of town lots have a right to locate their lot lines according to the stakes set by the plattor of the lots, and that no subsequent survey can unsettle such lines, Mr. Justice Cooley saying:

"The question afterwards is not whether the stakes were where they should have been in order to make them correspond with the lot lines as they should be if the platting were done with absolute accuracy, but it is whether they were planted by authority, and the lots were purchased and taken possession of in reliance upon them. If such was the case they must govern, notwithstanding any errors in locating them."

For the reasons herein assigned, the judgment of the lower court is reversed, with instructions to enter a decree upon the findings heretofore found in favor of appellants.

RUDKIN, C. J., FULLERTON, GOSE, and MORRIS, JJ., concur.