[No. 9756. Department Two. January 13, 1912.]

WILLIAM R. WINDSOR et al., *Appellants*, v. P. J. SARSFIELD et al., *Respondents*.[1]

ESTOPPEL — BOUNDARIES — ACQUIESCENCE IN IMPROVEMENTS. The vendor is estopped to recover possession of land within an inclosure shown to the vendee as the boundary line, where no survey was made and no protest was made while the vendee went into possession, cultivated the land up to the line, and erected near the line on the land in dispute a dwelling costing $7,000.

ESTOPPEL — EVIDENCE — PRESUMPTIONS AND BURDEN OF PROOF. The rule that evidence to sustain an estoppel to claim land must be clear and convincing does not apply where the conduct of the parties is not relied upon to overcome a writing, and the evidence on both sides is of the same kind.

BOUNDARIES — ESTABLISHMENT — AGREED LOCATION. Practical or agreed location of a boundary line results where a fence on the supposed boundary was pointed out to the vendee, who took possession and made valuable improvements close to the line without any protest upon the part of the vendor, and the same was acquiesced in for seventeen years.

[1]Reported in 119 Pac. 1112.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered March 28, 1911, upon findings in favor of the defendants, in actions involving a disputed boundary line, after a trial to the court.    Affirmed.

*McWilliams, Weller & McWilliams (Robertson & Miller,* of counsel), for appellants.

*Cannon, Ferris, Swan & Lally,* for respondents.

CHADWICK, J.—This is a suit over a disputed boundary line. In 1890, the property being owned by appellants, a fence was built a part of the way along the east boundary of the tract of land now owned by respondents. In 1892, the land was sold to a man named Cook, who began the erection of a fence along the east line, to connect with the fence already erected. He was told that the fence was east of what was perhaps the true line, and accordingly set his fence over so that, when he came to the fence that had been erected by appellants, he made a right angle turn, or as it is described, a jog of six or eight feet. Cook and one of the appellants had measured the boundaries of the land with a rope. For reasons not now material, Cook gave up the land, and it reverted to the vendors.

In 1900, the land was sold by appellant W. R. Windsor to these respondents. No survey was made, but respondents were taken on the land, which was fenced in one inclosure, its boundaries were pointed out, and they were told that it contained fifty acres more or less. Respondents have erected valuable improvements thereon, a dwelling house costing about $7,000 being erected near the east boundary as defined by the fence, but which is without the boundary of the government subdivision, as ascertained by a survey which appellants had made in 1907; the true line being about 108 feet west of the fence at the south boundary of the quarter section corner, and about fifty feet west of the fence at the north boundary of the quarter section corner.

19—66 WASH.

While there is some conflict in the evidence, the testimony of respondents, upon which the findings of the trial judge are predicated, shows that, aside from the fact that respondents were led to believe that they were purchasing all of the land within the inclosure, they have since gone into possession, cultivated or occupied all of the land that was tillable up to the line fence as it had been established, and appellants had made no protest, either as to the use of the land or to the making of the improvements aforementioned. While there are two distinct suits brought to this court, they are governed by the same legal principles and will be treated as one. The court below held appellants estopped to maintain an action to recover the land, and an appeal is prosecuted, appellants relying upon the established principle that evidence of estoppel in this class of cases should be of such clear and convincing character as to leave no doubt in the mind of the court.

While the appellants have said that they informed respondents before and while building their house that it was upon disputed ground, and that they should have the line surveyed, the trial judge, by reference no doubt to the undisputed facts and manner and demeanor of the witnesses, was satisfied that equity would not be done if appellants were allowed to prevail. While it is true that evidence to sustain an estoppel in cases of this character should be clear and convincing, yet the rule is generally applied where the conduct of parties is relied on to overcome some writing out of which the rights or relations of the parties originated. Where the evidence on both sides is of the same kind, it follows that a court must be governed by the ordinary rules of evidence. When so considered, we have no doubt of the correctness of the court's conclusion. *Edwards v. Fleming*, 83 Kan. 653, 112 Pac. 836; *Lydick v. Gill*, 68 Neb. 273, 94 N. W. 109; *Ross v. Ferree*, 95 Iowa 604, 64 N. W. 683; *Redmond v. Excelsior Sav. Fund & Loan Ass'n*, 194 Pa. St. 642, 45 Atl. 422, 75 Am. St. 714; *Marines v. Goblet*, 31 S. C. 153, 9 S.

E. 803, 17 Am. St. 22; *Leifheit v. Neylon*, 139 Iowa 32, 117 N. W. 4; 5 Cyc. 930.

While the foregoing discussion disposes of the contentions of all of the appellants, W. R. Windsor and wife are precluded from recovering by reference to another rule—that of agreed boundaries. The measurement of the land at the time Cook set his fences, and the pointing out of the boundaries to respondents at the time they purchased and went into possession, are sufficient to overcome any right that the last named appellants may have had in the land.

"Practical or agreed location of a boundary line may result from long acquiescence in its location, or when drawn and acted upon by the parties, as where valuable improvements are placed with reference to it and before it is denied by either party." *Turner v. Creech*, 58 Wash. 439, 108 Pac. 1084.

In that case we adopted the rule laid down in *Flynn v. Glenny*, 51 Mich. 580, 17 N. W. 65:

"The question afterwards is not whether the stakes were where they should have been in order to make them correspond with the lot lines as they should be if the platting were done with absolute accuracy, but it is whether they were planted by authority, and the lots were purchased and taken possession of in reliance upon them. If such was the case they must govern, notwithstanding any errors in locating them."

See, also, *Steinhilber v. Holmes*, 68 Kan. 607, 75 Pac. 1019.

Finding no error, the judgment of the lower court is affirmed.

DUNBAR, C. J., MORRIS, ELLIS, and CROW, JJ., concur.