[No. 30132. Department One. April 1, 1947.]

IVEN J. STROM *et al., Appellants,* v. FELIX ARCORACE
*et al., Respondents.*[1]

*Christ D. Lillions,* for appellants.

*Elliott & Lee,* for respondents.

ABEL, J.—This is a dispute concerning the location of the boundary line between two lots in the city of Seattle. For convenience, we will refer to the lot now owned by defendants as lot A and the one owned by plaintiffs as lot B. Both of these lots were owned by a common grantor from prior to 1890 until a few years before this controversy arose. This common grantor built a house on lot A, about the year 1890; it stands there today. Sometime prior to 1919, the same owner of both lots built a house on lot B. About 1920, he dug a basement under the house on lot A and put concrete steps and an entrance way to the basement on the side of the house between lots A and B. He also constructed a porch over this entrance way and placed a fence around

[1]Reported in 178 P. (2d) 959.

lots A and B. The fence between lots A and B was a few inches over from the concrete steps and porch.

Plaintiffs resided in the neighborhood of these lots for approximately six months prior to the time they purchased lot B in June, 1941. Their contract and deed described the property as "Lot Four (4) Block One (1), Olive Addition to the City of Seattle, Washington, (which property is also known and designated as No. 726 - 24th Avenue South in said City)." At the time plaintiffs purchased, there was a fence completely surrounding this lot B. Subsequently, plaintiffs found that, according to the plat on file in the auditor's office, their lot should be 41.5 feet wide, and they discussed this with the common grantor, who was still residing on lot A. They were told if there was a mistake in the fence, it was on the other side. After plaintiffs had found that their lot was 1½ or 2 feet narrower than the plat called for, they rebuilt the front part of the fence between the two lots A and B from the street to a point back of the house on lot A. This fence was placed in exactly the same position as the old fence. Subsequently, the common grantor, or his estate, sold lot A, and the vendee in that deed sold to defendants, who went into immediate possession.

After defendants acquired title to lot A and went into possession, this controversy arose, plaintiffs claiming that, according to the recorded plat, the true line between the lots was over 1½ to 2 feet from the fence on lot A. This would place the true line so that it would go through the concrete steps and entrance way and cut off defendants' entrance to their basement.

Plaintiffs brought suit to establish the true boundary line between their lots under Rem. Rev. Stat., § 947 [P.P.C. § 13-1] et seq. The defendants, by their cross-complaint, sought to quiet title in them to the strip of land 1½ to 2 feet wide between their house and the fence. The trial court dismissed plaintiffs' complaint and established the fence as the dividing line and common boundary between the lots.

Plaintiffs appealed and made three assignments of error: (1) that the court erred in departing from the legal description contained in his deed and in so modifying the di-

mensions of his lot as to contradict both the deed and plat on record; (2) that the court erred in not finding that a boundary dispute existed; (3) that the court erred in finding that the fence was the dividing line. We will discuss the three assignments together.

In the first place, there has been some discussion regarding the effect of appellant's contract and deed describing the lot and then adding "(which property is also known and designated as No. 726 - 24th Avenue South in said City)." We will not discuss the effect of these words, as they cannot possibly be of any benefit to appellant, and the law in this state is so well settled regarding the establishment of a boundary by a common grantor that we do not need to discuss the legal effect of this addition to the contract and deed.

■ Appellant claims error on the admission of parol evidence to modify the description in the deed. However, it would be impossible to determine the location of the property conveyed unless parol evidence were admitted. In *Newman v. Buzard,* 24 Wash. 225, 64 Pac. 139, we stated:

"Parol evidence is, and must of necessity be always, admissible to identify the property described in and conveyed by a deed, to ascertain to what property the particulars of description in the deed apply."

Furthermore, in all of the cases hereafter cited, parol evidence was of necessity admitted to determine the location of the boundary line by a common grantor.

■ In *Turner v. Creech,* 58 Wash. 439, 108 Pac. 1084, we stated, after quoting several cases: "The location of a line by a common grantor is binding upon the grantees."

*Roe v. Walsh,* 76 Wash. 148, 135 Pac. 1031, 136 Pac. 1146, was a case where the owner of two lots, by an erroneous survey, located the dividing line 21.6 inches from its true location, and with reference thereto built a flat on one of the lots, extending the eaves and a sidewalk to a side entrance over and upon the 21.6 inch strip of the other lot. He conveyed the lot and improvements believing and representing that the survey located the true dividing line. We held that the owner and those claiming under him

were estopped to assert title to the strip, in the possession of innocent purchasers.

In *Windsor v. Bourcier*, 21 Wn. (2d) 313, 150 P. (2d) 717, we stated, on p. 316 as follows:

"The situation in this case is that the common grantor surveyed and staked the land and the predecessors in interest of the parties hereto bought with reference thereto. These predecessors agree that the line fixed by the stakes was also fixed by the pole and cedar tree. The stakes are now gone but the pole and cedar stump remain. The court found that they marked the true line as staked. This must govern."

The general rule is stated in 11 C. J. S. 651, as follows:

"*Location by mutual grantor.* A practical location made by the common grantor of the division line between the tracts granted is binding on the grantees who take with reference to that boundary. The line established in that manner is presumably the line mentioned in the deed, and no lapse of time is necessary to establish such location, which does not rest on acquiescence in an erroneous boundary, but on the fact that the true location was made, and the conveyance in reference to it. However, for a boundary line established by a common grantor to become binding and conclusive on grantees it must plainly appear that the land was sold and purchased with reference to such line, and that there was a meeting of minds as to the identical tract of land to be transferred by the sale."

█ In the case at bar, a common grantor established a line fence between two lots. He built an entrance way to the basement and porch up to within a few inches of this fence. In the event the line as fixed by the plat were to be held the correct line, then the line would cut off a part of the entrance way and porch, making it impossible to use the entrance way as a means of entrance to and exit from the basement. Both lots were enclosed by a fence.

Appellants purchased their property seeing and knowing the conditions as they existed, and although they raised a question with their grantor as to the location of the dividing line, they were assured by their grantor that the fence was the correct line. They did nothing to protest—

in fact, they rebuilt a part of the fence in the same location as the former fence. They stood idly by while respondent purchased the adjoining lot. They are bound by the established boundary fence.

Judgment is affirmed.

MALLERY, C. J., MILLARD, SIMPSON, and SCHWELLENBACH, JJ., concur.

---

May 16, 1947. Petition for rehearing denied.