[No. 2895-2. Division Two. December 12, 1978.]

LELAND B. FRALICK, ET AL, *Appellants,* v. CLARK COUNTY, *Respondent.*

*Duane Lansverk* and *Landerholm, Memovich, Lansverk, Whitesides, Marsh, Morse & Wilkinson,* for appellants.

*James E. Carty, Prosecuting Attorney,* and *James Sellers, Deputy,* for respondent.

REED, J.—Plaintiffs Leland and Hanna Fralic appeal from an order quieting title to a disputed strip of land in favor of defendant Clark County. They also challenge the trial court's refusal to award them damages. We find no substantial merit in plaintiffs' arguments and affirm.

The Fralicks and Clark County own adjoining tracts near Yacolt, Washington. Both tracts are bisected by Big Tree Creek and are in a lightly forested area. Clark County purchased its property for use as a public park. According to the deeds of both parties, the common boundary is found by beginning at a point 175 feet south of the intersection of Dole Road (County Road 12) and the Yacolt–Vancouver Road; then proceeding at an angle of 21 degrees northwest to Big Tree Creek and then continuing due west to the Northern Pacific Railway right–of–way. When the Fralicks commenced leveling trees and excavating for a septic system preparatory to building a house at a site south of the boundary line described in the deeds, the County ordered them to stop work on the project. The Fralicks complied with this order and initiated the present quiet title action.

This matter came to trial in December of 1976; the Fralicks presented four theories in support of their contention that they own the land on which they were planning to build. First, they claimed that the Dole Road referred to in the deeds was "Old" Dole Road, allegedly located south of Schumacher Creek (see map). Second, they asserted that

they had acquired title to the disputed property by adverse possession. Third, they urged that the doctrine of "practical location" controls this case and finally, they maintained that the County was estopped from denying Fralicks' ownership of the disputed area. The trial court found against the Fralicks and quieted title in favor of the county. The Fralicks appeal.

On appeal, the Fralicks are pursuing only two of their theories; they appear to have abandoned the adverse possession and "Old Dole Road" arguments. Unfortunately, the record does not indicate whether the boundary, as located by measuring 175 feet south of the old road, is the same as that allegedly supported by the "practical location" and "estoppel" arguments. For present purposes, however, we will assume that adoption of any of the Fralicks' arguments would result in the establishment of a boundary approximately 175 feet south of the old road.

We will first address the contention that this case falls within the rule of "practical location," or as the doctrine

that specifically applies to this fact situation is more commonly called, "location by a common grantor." *See* Ellis, *Boundary Disputes in Washington*, 23 Wash. L. Rev. 125, 130 (1948); 2 H. Tiffany, *Real Property* § 655 (3d ed. 1939). The following is a summary of the evidence introduced by the Fralicks in support of this theory.

Prior to 1940, both parcels of land were owned by C. H. Cole and L. E. Witter. In 1940 Cole and Witter sold the southern tract (now owned by Clark County) to a Mr. Smale. The real estate contract involved in this transaction described the northern boundary as being 175 feet south of Dole Road. However, during negotiations, Cole and Smale examined the property together and Cole pointed out the lower falls of Big Tree Creek as the northern boundary of the property. The falls actually lie south of the line fixed in the deed. When Mr. Smale sold to a Mr. Harrison in 1959, he told Harrison that the lower falls marked the northern boundary of the lot. In 1974 Harrison sold the southern tract to Clark County. This deed refers to the Dole Road boundary and Harrison did *not* in any way indicate that he believed the lower falls marked the northern line of the property. In addition, the Fralicks introduced a number of exhibits which show the chain of title for the north lot, the lot they now own. None of the Fralicks' predecessors was told that the "true" boundary was at odds with the line described in his deed.

█ It is clear that a grantor who owns land on both sides of a line which he has established as the common boundary is bound by that line. *Clausing v. Kassner*, 60 Wn.2d 12, 371 P.2d 633 (1962); *Turner v. Creech*, 58 Wash. 439, 108 P. 1084 (1910). However, for the boundary line to become binding and conclusive on grantees,

> it must plainly appear that the land was sold and purchased with reference to the line, and that there was a meeting of the minds as to the identical tract of land to be transferred by the sale.

*Kronawetter v. Tamoshan, Inc.*, 14 Wn. App. 820, 826, 545 P.2d 1230 (1976). *Accord, Thompson v. Bain*, 28 Wn.2d

590, 183 P.2d 785 (1947). *See also* 11 C.J.S. *Boundaries* § 77(b), at 651 (1938); Browder, *The Practical Location of Boundaries*, 56 Mich. L. Rev. 487, 529 (1958). In other words, as discussed by the court in *Atwell v. Olson*, 30 Wn.2d 179, 190 P.2d 783 (1948), the question of applicability of the common–grantor theory presents two problems: (1) was there an agreed boundary established between the common grantor and original grantee, and (2) if so, would a visual examination of the property indicate to subsequent purchasers that the deed line was no longer functioning as "true" boundary?[1] *See also Kay Corp. v. Anderson*, 72 Wn.2d 879, 436 P.2d 459 (1967). Although we answer the first question in the affirmative, see *Light v. McHugh*, 28 Wn.2d 326, 183 P.2d 470 (1947), we must conclude that the trial court's finding that the County is not bound by prior boundary–line agreements is supported by substantial evidence. There is nothing in the record that indicates that the County, through its agents, had any knowledge of the "lower falls" boundaries. The deed referred to the Dole Road line, the falls area was not fenced and no other visible markings could be found on the land. Courts may split on the question of whether a physical, on–the–ground demarcation is required as between the original parties; however, there is little question that such action is required if subsequent purchasers without actual notice of the agreement are to be bound. *The Practical Location of Boundaries*, 56 Mich. L. Rev. 487, *supra* at 529.

Nor are we convinced that the trial court erred in holding that the County is not estopped from claiming the disputed land. According to the Fralicks, if the common boundary is located 175 feet south of Dole Road, their property would contain only 8 acres of land. They further assert that if they are given title to the disputed strip, their tract would

---

[1]Of course, even in the absence of an on–the–ground marking, a subsequent purchaser with actual notice of the agreement is bound by the line. *Furlow v. Dunn*, 201 Ark. 23, 144 S.W.2d 31 (1940); Browder, *The Practical Location of Boundaries*, 56 Mich. L. Rev. 487, 529 (1958).

consist of approximately 10 acres. Because they have paid property taxes to the county on 10 acres of land, they argue that the County is estopped from asserting title to the disputed area.

 Estoppel requires three elements: (1) an admission, statement or act inconsistent with a claim afterwards asserted; (2) an action by the other party in reliance on such statement; and (3) injury resulting from permitting the first party to contradict or repudiate such statement. *Arnold v. Melani,* 75 Wn.2d 143, 437 P.2d 908, 449 P.2d 800, 450 P.2d 815 (1968); *Burkey v. Baker,* 6 Wn. App. 243, 492 P.2d 563 (1971). The party seeking to disturb title to land on an estoppel theory has the burden of establishing estoppel by clear, cogent and convincing evidence. *Tyree v. Gosa,* 11 Wn.2d 572, 119 P.2d 926 (1941); *Burkey v. Baker, supra.* We agree with the trial court and find that the Fralicks have not met their burden in this case. We note that the majority of courts that have considered this issue have concluded that the mere levy and collection of taxes on property by a government entity does not bar it from asserting title to such property. *Barbee Mill Co. v. State,* 43 Wn.2d 353, 216 P.2d 418 (1953); Annot., 1 A.L.R. 362 (1919); 10 E. McQuillin, *The Law of Municipal Corporations* § 28.56 (rev. 3d ed. 1966).

The Fralicks also urge that the County's tax assessment of the Magone tract (the parcel to the east of the Fralicks), estops it from challenging the Fralicks' claim to the disputed strip. Our resolution of the first prong of the Fralicks' estoppel contention makes it clear that their argument is without merit.

As their final point, the Fralicks maintain that the County's action is establishing a park adjoining their property without proper fencing increased the number of people trespassing on their land and caused them to suffer "constitutional damages." They do not allege a "taking" but rather seek damages pursuant to Const. art 1, § 16 (amendment 9). This section states that "[N]o property

shall be taken or damaged for public or private use without just compensation having been first made."

The gist of the Fralicks' argument is that the County was negligent in not controlling the trespassers. It appears that Const. art. 1, § 16 was designed to protect from damages resulting from the "performance of a planned action by the state in its sovereign capacity" and not from those caused by the "negligent performance of the state project." *Deaconess Hosp. v. State,* 10 Wn. App. 475, 483, 518 P.2d 216 (1974). *See also Jacobs v. Seattle,* 100 Wash. 524, 171 P. 662 (1918). Therefore, it appears that the only action available to the Fralicks was one for common–law negligence. In its memorandum opinion, the court noted that the County had not yet opened the park to the public and that it had, in fact, discouraged public use of the land. The trial court also observed that it would have been foolish for the County to expend funds to fence a boundary that is the subject of a lawsuit. After reviewing all the evidence, the trial judge determined that the County was not negligent in failing to fence the area. Because we find substantial evidence in the record to support this finding, we will not disturb the trial court's decision to deny damages.

Having found that the judgment entered by the trial court was proper in all respects, we affirm.

PEARSON, C.J., and PETRIE, J., concur.

Reconsideration denied January 9, 1979.

Review denied by Supreme Court May 4, 1979.